# In re Brodsky

*C. Brewster Rhoads,* for Committee of Censors.

*Maurice J. Speiser,* for respondent.

PER CURIAM, April 15, 1935.—This matter comes before the court en banc on a rule that issued out of this court directed to the respondent and requiring him to answer the charges set forth therein concerning unethical and unprofessional conduct.

In brief the rule was issued as a result of information laid before the judges by a special committee of the bar association appointed to investigate charges of alleged irregularities and unprofessional conduct under authority of the Act of June 12, 1931, P. L. 543.

In the case of the immediate respondent, the record shows that he was an employe, at the time these proceedings were commenced, of the firm of Gartner and Lemisch, which had succeeded the firm of Gartner, Felger and Lemisch.

He was associated with the firm of Gartner, Felger and Lemisch from the time of his admission until August of 1934, at which time he established a new partnership and removed his offices.

For all except approximately the last 6 months of his association with the firm of Gartner and Lemisch, Mr. Brodsky worked without remuneration. During the period mentioned he was paid $35 a week, which totaled $1,050. He was promised 15 percent of the profits of the firm, but the profits had not materialized up until the time he severed his connection to establish his own offices.

The office arrangements were that he was to attend to whatever business of the firm was assigned to him, in return for his desk room, but that he was to be permitted to attend to such private practice as he could acquire.

With relation to his private practice there is no complaint or criticism, for the allegations of unethical conduct are based upon business he attended to for his employer associates.

It was testified that from the time of Mr. Felger's death in December 1933, most of the criminal business of the office was attended to by Mr. Brodsky, and that his only knowledge of the source or origin of the clientele was limited to the list of cases given him on the various days of the week that they were listed for trial, and no further information.

A number of the witnesses who testified before this court stated that they were sent to the several courtrooms and told that they would there be repre-

sented by Mr. Brodsky; that in many instances they had never seen him and he had never met them; that the work was assigned to Mr. Brodsky by either Mr. Lemisch or some office assistant.

Respondent readily admitted that most of his clients in the criminal courts, particularly in the so-called numbers cases, were strangers until their arrival in the courtroom, and in a few isolated instances he had represented them in magistrates' hearings. Mr. Brodsky seldom asked for a fee, and more seldom received one. His explanation of this arrangement was that he assumed that the financial relationship of client and attorney had been established in the office and needed no discussion in the courtroom.

The district attorney's trial lists produced in court showed that in many instances the firm name appeared as counsel in cases, but that Mr. Brodsky had appeared as the trial lawyer.

There is no evidence of any character that the respondent was familiar with or acquainted with, any irregularity in the relationship of client and attorney charged against his associates. He did not share in the profits, he did not enjoy the confidence of his employers so far as the sources of business and the financial receipts were concerned, and until a few short weeks before his retirement from that office, had no right to inspect the books or make inquiry of the private affairs of the firm.

While it may seem strange that a man so closely identified with this atmosphere would not suspect that his employers were handling a great many cases of the same character, the doubt must be resolved in favor of the respondent because of the relationship that existed between him and his employers. Were he asked to perform unprofessional or unethical acts, or were he part and parcel of a conspiracy to bring about the commission of, or to defeat justice in the trial of, criminal acts, or conspiracies, he might be considered as guilty as his employers. But such are not the facts.

It is the opinion of the court that a man learned in the law, with a background of 10 years' business experience, should scrutinize more carefully the business of his associates, be they partners or employers, and if suspicious, and his suspicions be well grounded, he should seek employment elsewhere.

In view of the fact, however, that the relationship that previously existed was voluntarily severed some 10 months ago, this advice is offered for future guidance, and not as a suggestion for an action that has already been taken.

The respondent deserves the censure of the court for going blindly ahead, along such an avenue of endeavor, without taking the precautions that an ordinarily prudent man should have taken when overwhelmed with such a large volume of business of a character that had assumed the proportions of a public scandal, or, in the vernacular of the underworld, a racket.

We feel however that the respondent is guiltless, so far as the charges of unethical and unprofessional conduct are concerned, and with this reprimand we suggest that in the future he pay stricter attention to the source of his legal business, whether it be his own or attended to by him for others.

In view of all of the foregoing the court enters the following

## Decree

And now, to wit, April 15, 1935, upon consideration of the rule entered by the court and after hearing thereon, it is ordered that the rule be discharged.